# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JOHNNY M. BURDEN,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:17CV00343 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **SCARBERRY, ET AL.,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendants. ) | |

*Johnny M. Burden, Pro Se Plaintiff; Laura Maughan, Office of the Attorney General, Richmond, Virginia, for Defendants.*

The plaintiff, Johnny M. Burden, a Virginia inmate proceeding pro se, sues prison officials for allegedly failing to protect him from being attacked by other inmates. After review of the record, I conclude that the defendants' dispositive motions must be granted.

I. BACKGROUND.

A. Plaintiff's Evidence and Claims.

Burden is incarcerated at Red Onion State Prison ("Red Onion"). His claims stem from physical altercations with other inmates and the alleged conduct of two defendant correctional officers, Elliott Wells and T. Lovell.

On the afternoon of May 30, 2017, while Burden was on duty as a kitchen worker, inmate T. Tensley told him to come in the stockroom to get some rice for

meal preparation.[1]  As the two inmates walked into the stockroom, Tensley "grabbed and choked" Burden.  Compl. Ex. A, Burden Aff. at 1, ECF No. 1-1.  Burden told his assailant to let him go, and Tensley did so.  The inmates left the stockroom "unseen by any kitchen supervisors or C/O's [correctional officers]" and returned to their duties.  *Id.*  Burden "did not tell a supervisor or C/O [about the assault] because [he] was scared it might be consequences from other inmates or offenders in [his] pod or in the kitchen."  *Id.* at 2.  Burden complains that there is "suppose to be one C/O in the stockroom or supervisor when a offender enters."  *Id.*

On May 31, 2017, Burden was back at work in the kitchen.  Between 3:00 and 3:30 a.m., Tensley and inmate Michael Edwards told Burden that he "had to go into the stockroom to fight one of them."  Compl. Ex. B, Burden Aff. at 1, ECF No. 1-2.  As Burden started into the stockroom, "C/O's Lovell and Wells gave T. Tensley and Michael O. Edwards a head nod to go ahead in the stockroom to fight."  *Id.*  The inmates pushed Burden into the stockroom, "telling [him] to go into a corner where the camera's [sic] can't see."  *Id.* at 2.  Burden refused, "so they begin to fight & punch at [Burden] and the only thing [he] can do is fight them back to defend" himself.  *Id.*  Afterwards, Burden "went back to work like

---

[1] The defendants' counsel and the Virginia Department of Corrections ("VDOC") Inmate Locator indicate that the proper spelling of this inmate's last name is Tensley, although the parties use various spellings.

nothing happen[ed]." *Id.* Tensley's face was bleeding, and Burden had blood on his own jumpsuit. He "didn't go tell because [he] fear that if [he] told the C/O's that was working they would've . . . told the offender I was telling & got me beating up again." *Id.*

Later on the morning of May 31, Burden was frying eggs on the grill for the breakfast meal. Tensley approached him and said Burden "got to see him in the stockroom which means . . . to come and fight him in the stockroom." *Id.* at 3. Burden declined and picked up a sheet pan to shield himself if Tensley tried to attack him. He told Tensley to back away, that he did not want any trouble, and walked around the tables to get away from Tenseley. Defendant Lovell asked the inmates if they were okay, and both inmates said they were fine. Just then, Tensley turned around and "swings a punch" at Burden, who raised the sheet pan. *Id.* at 3-4. Tensley's punch hit the pan, and it dropped to the floor. Edwards then came up from behind, and both he and Tensley jumped on Burden, while "Lovell and Wells just watch." *Id.* at 4. Burden fought back against the inmates, believing he would be killed if he did not.

At this point, Lovell and Wells issued a radio report that inmates were fighting, "sprayed mase [sic]" on the inmates, and ordered them to get on the ground. *Id.* The inmates did so, were restrained, and were taken to the medical unit. From the incidents on May 31, Burden suffered a "cut on [his] left elbow & a

second degree burn on right middle of [his] arm" from the grill.  *Id.* at 5.  He took antibiotics for two weeks and required treatment daily for several days for the burn.  Investigators Fannin and Bentley met with Burden later on May 31 to review camera footage of the May 31 incidents and said they would not charge him with disciplinary infractions.

Nevertheless, a Disciplinary Offense Report ("DOR") was issued charging Burden with fighting, stating "While working in the kitchen [Lovell] . . . observed [Burden] involved in a physical altercation with [Tensley] and [Edwards]."  Mem. Supp. Mot. Summ. J. Lovell Aff. Enclosure C, ECF No. 22-3.  Lovell did not list Wells on the DOR as a witness to the offense.  During the disciplinary proceedings, on a witness statement for Burden, Lovell stated that "he only seen three people fighting."  Ex. B Burden Aff. 5, ECF No. 1-2.  The hearing officer found Burden guilty of the infraction for fighting and penalized him with a $15 fine.  The reason stated for the guilty finding was that Burden "admitted that he fought with offender Tensley."  Lovell Aff. Enclosure C, ECF No. 22-3.  In responding to Burden's disciplinary appeal, Warden Kiser stated:  "Once you threw a punch you were guilty of fighting with another person."  *Id.*

According to Burden, this disciplinary infraction delayed his transfer to a lower security prison.  Burden blames this delay on prison officials who were allegedly "covering incident that happen in the stockroom fight & not reporting to

the proper authorities." Ex. B Burden Aff. 7, ECF No. 1-2. He also faults supervisory defendants for not training and supervising officers to ensure that they followed policies to protect inmates. *Id.* at 7.

## B. Defendants' Evidence.

On May 31, 2017, defendants Wells and Lovell worked the night shift, supervising predawn meal preparation. At about 3:30 a.m., Wells and Lovell were standing near each other when they "realized that the kitchen had become very quiet." Mem. Supp. Mot. Summ. J. Wells Aff. ¶ 4, ECF No. 22-2. They "turned around" and saw Burden, Tensley, and Edwards fighting on the other side of the kitchen, *id.,* which "is about half the size of a basketball court." *Id.,* Lovell Aff. ¶ 5, ECF No. 22-3. The officers immediately alerted other officials of the fight, and "within seconds," both officers crossed the kitchen and ordered the inmates to stop fighting. Wells Aff. ¶¶ 5, 10.

The altercation continued, so the officers administered "OC (oleoresin capsicum) spray" toward the fighters. *Id.* at ¶ 5. The first two bursts (one from Wells and then one from Lovell) did not hit the target area and were ineffective in stopping the fight. Wells' second burst, however, was on target and convinced the inmates to stop fighting, separate, and lay down on the floor. In response to the radio report of a fight, several officers arrived in the kitchen, helped to restrain the

inmates, and escorted them to the medical unit for assessment of any injuries and decontamination from the OC spray.

Both Wells and Lovell deny that they have ever "given offenders permission to fight each other." *Id.* at ¶ 12; Lovell Aff. ¶ 17. If one inmate believes his safety may be in danger because of a problem with another inmate, per VDOC procedures, he can tell any officer of that fear to set in motion procedures to protect him and have his concerns investigated. If the investigation confirms that the fear is valid, the inmates will be placed on a "keep separate" list. Lovell Aff. ¶ 16.

Both Wells and Lovell state that Burden never told them that he feared for his safety around Tensley or Edwards. To the officers' knowledge, Burden, Tensley, and Edwards had not been placed on a "keep separate" list. Both officers also report that they had no knowledge or information indicating that Burden had any problems with Edwards or Tensley, and had no knowledge that a fight was going to occur between these inmates on May 31. Both Wells and Lovell report that they did not see Tensley or Edwards jump on Burden that day.

### C. The Claims and Motions.

I construe Burden's Complaint as asserting the following § 1983 claims: (1) Lovell and Wells failed to protect Burden and violated VDOC policy on May 31 when they nodded at three inmates to enter the stockroom together to fight; (2)

Lovell and Wells later failed to protect Burden from the assault by the grill on May 31; (3) Lovell falsely testified during disciplinary proceedings, causing Burden to be deprived of property without due process; (4) the warden and assistant warden failed to train and supervise officers and to enforce policies to protect inmate kitchen workers from inmate assaults; and (5) supervisory defendants and investigators failed to report to authorities and covered up the three inmate assaults.[2]  Burden also asserts "a state tort claim" against the supervisory defendants "pursuant to their deficient management of subordinates for failing to set up policies."  Ex. A Burden Aff. 3, ECF No. 1-1.

Lovell and Wells have filed a Motion for Summary Judgment, and the other defendants have filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Burden has responded to both motions, making them ripe for consideration.

## II.  DISCUSSION.

### A.  Summary Judgment Standard of Review.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only [material] disputes over facts

---

[2] As defendants to Claims (4) and (5), Burden names Warden Kiser, Assistant Warden Artrip, Kitchen Supervisor Scarberry, Lieutenant Middleton, Unit Manager Collins, Sergeant S. Taylor, Fannin, and Bentley.

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In short, a motion for summary judgment should be granted when the proof, taken in the form admissible at trial and resolving all factual doubts in favor of the non-moving party, would lead a reasonable juror to but one conclusion. *Id.* at 247-52. I must "view the facts and draw reasonable inferences in a light most favorable" to Burden, as the nonmoving party, and presume that his evidence is credible. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

Lovell and Wells have filed in support of their motion affidavits and documentation. Accordingly, to survive the defendants' motion, Burden must present sufficient evidence that could carry the burden of proof of his claims at trial. *Id.* He "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.[3] "[U]nsupported speculation is not sufficient to defeat a summary judgment motion." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992).

---

[3] I have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

B.  Failure to Protect.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes on prison officials an "obligat[ion] to take reasonable measures to guarantee inmate safety," specifically, "to protect prisoners from violence at the hands of other prisoners."  *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015).  A prisoner alleging that prison officials have failed to keep him reasonably safe from other inmates must show that (i) objectively, the prisoner was incarcerated under conditions posing a substantial risk of serious harm, and (ii) subjectively, the official must have had a "sufficiently culpable state of mind to be held liable," namely, the state of "deliberate indifference" to the substantial risk of serious harm.  *Id.* at 133.

Proving deliberate indifference requires showing "more than ordinary lack of due care for the prisoner's interests or safety, and more than mere negligence, but less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result."  *Id.*  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not," cannot constitute "infliction of punishment."  *Farmer*, 511 U.S. at 838.  Specifically, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

A prison official can, of course, rebut the deliberate indifference charge, even in the face of an obvious risk. Moreover, officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. *Id.* at 844-45.

For purposes of this Opinion, I will assume that Burden has satisfied the first, objective element of this standard by demonstrating that he was assaulted on May 30 and 31, 2017, and suffered physical injuries. I cannot find, however, that he has presented facts showing deliberate indifference by anyone.

Taking the evidence on Claim (1) in the light most favorable to Burden, policy required an officer to accompany inmates into the stockroom,[4] but Wells and Lovell gave inmates Tensley and Edwards "a head nod to go ahead in the stockroom" on May 31, 2017, with Burden and without an officer. Compl. Ex. B, at 1, ECF No. 1-2. The officers' alleged violation of the prison policy, however, is not a federal constitutional violation and therefore, is not actionable under § 1983. *See Riccio v. Cty of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990).

Furthermore, in response to Burden's account of their actions, Wells and Lovell state that on May 31, they had no knowledge of any trouble between

---

[4] The defendants have not presented evidence contradicting Burden's representations of this policy.

-10-

Burden and inmates Tensley and Edwards, or of any excessive risk that they would assault Burden that day in the stockroom. Wells and Lovell also state that they have never given permission for inmates to fight each other. Burden cannot overcome the defendants' sworn statements with his merely speculative interpretation of a head nod as encouragement to his assailants. Moreover, he has failed to present any facts showing that the officers knew of a risk that a fight would occur, let alone that they purposely allowed one to happen. On the contrary, Burden admits that he did *not* tell any officer about being assaulted by Tensley in the stockroom on May 30. The officers' mere failure to enforce the stockroom policy was, at most, carelessness or negligence and cannot support a finding of deliberate indifference. *Makdessi*, 789 F.3d at 133 (requiring "more than ordinary lack of due care for the prisoner's interests or safety" for deliberate indifference claim). Because Burden presents no disputed fact by which he could persuade a fact finder that Wells or Lovell knew of an excessive risk that he would be harmed in the stockroom on May 31, 2017, I will grant summary judgment for these defendants on Claim (1).

In Claim (2), Burden asserts that later the same morning, Wells and Lovell watched while Tensley punched Burden by the grill and then Tensley and Edwards

jumped Burden.[5] Even if Burden could prove this scenario, he has not established deliberate indifference. He admits that he did not alert the officers to the trouble even after his initial conversation with Tensley by the grill, when Lovell asked if they were alright. Furthermore, the defendants' evidence is that they first saw the fight from a distance — across a kitchen that is half the size of a basketball court. They state that they immediately reported the fight, called for backup, and within seconds, approached the inmates to stop the fight. Burden does not offer any facts contradicting this evidence. He admits that he fought the inmates and does not deny that he continued to do so, despite orders from Wells and Lovell to stop and despite the first two of three bursts of OC spray. I find no disputed fact showing that the officers responded unreasonably to the fight by the grill on May 31, 2017. *See Farmer*, 511 U.S. at 844-45 (noting that officers' reasonable response to known risk of harm defeats deliberate indifference claim even if harm was not averted). I will grant summary judgment for Wells and Lovell on Claim (2).

---

[5] Burden asserts that his account of the officers' actions would be confirmed by the surveillance footage that he reviewed with the Red Onion investigators. I find no indication that Burden has served the defendants with requests for production of this footage, and it is not part of the record. Moreover, the defendants state that they saw the inmates fighting only after turning around. For purposes of this Opinion, however, I will assume without finding that the footage of the grill incident on May 31, 2017, would show Lovell and Wells facing toward the grill.

C.  Due Process.

Liberally construed, Claim (3) asserts that the disciplinary proceedings were defective, thus depriving Burden of the $15 fine without due process.  It is well-established that prison disciplinary proceedings implicating a protected interest trigger limited federal due process protections.  *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974) (involving a liberty interest in length of confinement).  The inmate is entitled to these protections before being deprived of a protected interest: (1) written notice of the charge at least 24 hours before the hearing; (2) disclosure of the evidence against him; (3) a limited right to call witnesses and present documentary evidence; (4) an impartial fact finder; and (5) a written statement of the evidence the fact finder relied on in reaching the finding of guilt.  *Id.* at 559-571.  Burden does not state, however, that the hearing officer denied him any one of these procedural protections during the disciplinary proceedings on his charge for fighting.

Accordingly, I construe Burden's claim as challenging the sufficiency of the evidence against him.  He clearly believes that since he did not start the fight, he should not have been convicted of the offense of fighting, and that Lovell's descriptions of events denied him support of this argument at the hearing.  The requirements of due process, however, are met when "the findings of the prison disciplinary [fact finder] are supported by some evidence in the record."

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.* at 456. The hearing officer had some factual basis for finding Burden guilty of fighting ─ Burden's own admission that he did so. Moreover, it is clear from the disciplinary appeal response that being attacked by Tensley and Edwards did not excuse Burden under the prison disciplinary regulations for fighting back against the inmates. I find no disputed fact showing a deprivation without due process here and will, therefore, grant summary judgment for Lovell on Claim (3).[6]

### D.  Standard of Review under Rule 12(b)(6).

A district court should dismiss a complaint under Rule 12(b)(6) if it does not present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must provide more than "labels and conclusions" or "naked assertions devoid of further factual enhancement" and present sufficient nonconclusory factual content that "allows the court to draw the reasonable inference that the defendant is liable for the

---

[6] The defendants erroneously argue that any due process claims concerning this disciplinary proceeding should be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994). The fine imposed on Burden for the fighting infraction had no effect on the length of his confinement. Thus, his success in this § 1983 action would not imply the invalidity of that term of confinement, and his current claim is not barred under the rule in *Heck*. *See Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam) (finding *Heck* inapplicable where success in § 1983 action "threatens no consequence" to duration of inmate's confinement).

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing a motion to dismiss, the court "must take all of the factual allegations in the complaint as true," but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

### E. Supervisory Liability.

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "[P]laintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676. No official can be held vicariously liable for actions of his or her subordinates under the theory of respondeat superior. For supervisory prison officials to be held liable under § 1983 for constitutional injuries inflicted by their subordinates, an inmate plaintiff must establish that: (1) the supervisor knew that his subordinates were engaged in conduct that posed a "pervasive and unreasonable risk of constitutional injury"; (2) the supervisor's response to this knowledge was so inadequate as to show "deliberate indifference or tacit authorization" of the risky practices; and (3) there was an "affirmative causal link between the supervisor's inaction and the particular

constitutional injury" the plaintiff suffered. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

In Claim (4), Burden alleges that the warden and assistant warden failed to provide appropriate training and oversight to ensure that officers followed kitchen safety policies. This conclusory assertion, all but unsupported by factual matter meeting the elements under *Shaw*, I need not accept as true. At the most, Burden contends that he told these defendants about the three assaults he suffered on May 30 and 31, 2017, after the assaults had happened, and that these attacks were captured by the surveillance cameras. This belated information of kitchen officers ignoring safety policies cannot show that any deliberate indifference by the warden and assistant warden played a role in failing to prevent or otherwise causing Burden's injuries. Therefore, I will grant the Motion to Dismiss as to Claim (4). Furthermore, pursuant to 28 U.S.C. § 1367(c), I decline to exercise supplemental jurisdiction over Burden's separate state law claim asserted against these defendants, and will dismiss it without prejudice.

In Claim (5), Burden sues supervisory officials for an alleged cover up of the kitchen assaults in failing to report these events to unspecified authorities. As with the previous claim, this conclusory assertion need not be accepted as true. Burden does not describe any action or specific inaction by any of these defendants, individually, that caused his injuries. He cannot hold them automatically liable for

-16-

the fact that Wells and Lovell did not require an officer to accompany inmates into the stockroom. Moreover, Burden fails to show any constitutional right implicated by the alleged nonreporting. He has no constitutional right to, or any judicially cognizable interest in, the prosecution or non-prosecution of another person. *See Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). I will grant the Motion to Dismiss as to Claim (5).

### III. CONCLUSION.

For the reasons stated, it is **ORDERED** that (1) Defendants' Motion to Dismiss (ECF No. 18) and Motion for Summary Judgment (ECF No. 21) are GRANTED as to all claims under 42 U.S.C. § 1983; and (2) Plaintiff's claims under state law are DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1367(c)(3).

A separate Judgment will be entered herewith.

ENTER: August 13, 2018

/s/ James P. Jones
United States District Judge